UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: _____

CHRISTOPHER MAYNARD )
Plaintiff )
)
)
v. )
)
COMMONWEALTH OF MASSACHUSETTS,)
MASSACHUSETTS BAY )
TRANSPORTATION AUTHORITY )
AND )
KENNETH GREEN, INDIVIDUALLY )
AND )
RICHARD SULLIVAN, INDIVIDUALLY )
Defendants )
)

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. INTRODUCTION

1.      This is an action under M.G.L. c.151B, 42 USC §1983, 42 USC §1981, M.G.L. c.12 §11, and 38 U.S. Code section 4301 et seq., for unlawful discrimination based upon race and veteran status, and interference with protected rights of association, and interference with statutory and constitutional rights through threats, intimidation and coercion. The action is brought by Christopher Maynard, a White male who worked for the Massachusetts Bay Transportation Authority ("MBTA") as a Lieutenant in the MBTA Police Department until June 23, 2016. Kenneth Green, at all times relevant to this Complaint, has been the Chief of the MBTA Police Department. Richard Sullivan, at all times relevant to this Complaint, has been the Superintendent of the MBTA Police Department, the "second in command" to Chief Green. Chief Green and Superintendent Sullivan, and other MBTA managers and supervisors engaged in the illegal practices alleged in this Complaint.

1

## JURISDICTION AND VENUE

2.      Jurisdiction over this matter lies in this Court pursuant to 28 USC §1343, and 28 USC §1367 (Supplemental Jurisdiction).

3.      Venue in this District Court is proper because the illegal employment practices complained of herein occurred in Boston, Suffolk County, Massachusetts.   Upon information and belief, the employment records related to Plaintiff's employment with Defendant MBTA are also located within Boston, Suffolk County, Massachusetts.

4.      On 12/2/16, Mr. Maynard filed a timely Charge of Discrimination on the basis of race and veteran status with the Massachusetts Commission Against Discrimination and the U.S. Equal Employment Opportunity Commission.

5.      Mr. Maynard has requested that his Charges of Discrimination pending at the Massachusetts Commission Against Discrimination and U.S. Equal Employment Opportunity Commission be withdrawn to allow him to file suit in Court. Those requests have been granted.

## THE PARTIES

6.      Christopher Maynard is a resident of Middleborough, Plymouth County, Massachusetts. He is a citizen of the United States. He is a White-Caucasian male. He is a disabled Veteran (as he has a 10% disability due to a back injury), having served in the U.S. Army.

7.      Defendant MBTA is a political subdivision of the Commonwealth of Massachusetts pursuant to M.G.L. c.161A §2, with a principle place of business in Boston, Suffolk County, Massachusetts. The Commonwealth of Massachusetts, MBTA

was Plaintiff's employer within the meaning of M.G.L. c.151B §5, and a person within the meaning of M.G.L. c.151B §4. At all times relevant to this Complaint, it was Plaintiff's employer within the meaning of 42 USC §2000e, was engaged in an industry effecting commerce within the meaning of 42 USC §2000e, and in all other respects met all of the requirements for coverage under 42 USC §2000e. It is responsible for the illegal actions of Defendants Green and Sullivan set forth herein.

8.      Defendant Kenneth Green is an individual residing in Massachusetts. At all times relevant to this Complaint, he was Chief of the MBTA Police Department, was one of the supervisors and managers of the MBTA Police Department, and engaged in the illegal and discriminatory actions alleged in this Complaint.  Chief Green is sued in his individual capacity.

9.      Defendant Richard Sullivan is an individual residing in Massachusetts. At all times relevant to this Complaint, he was the Superintendent of the MBTA Police Department, and engaged in the illegal and discriminatory actions alleged in this Complaint.  Mr. Sullivan is sued in his individual capacity.

10.     At all times relevant to this Complaint, Plaintiff performed his job in a satisfactory manner.

**FACTUAL BACKGROUND**

11. For eighteen years Mr. Maynard was an officer on the Massachusetts Bay

Transportation Authority ("MBTA") Police Department, serving with distinction, with an

unblemished record prior to the matters at issue in this complaint. At the time his

employment was terminated on June 23, 2016, he held the rank of Lieutenant with the

MBTA Police Department, having served in that rank since 2009.

12. On June 23, 2016 Mr. Maynard's employment was terminated, for reasons which violated various of his rights under his union contract, violated his rights under Massachusetts statutes and case law, violated his constitutional right to freedom of association, and constituted discrimination due to race and disabled Veteran status. During the course of the arbitration of his dismissal and the determination of the appropriate relief for the matters at issue in the arbitration (namely, the extent to which Mr. Maynard should receive backpay, and whether or not he should be reinstated to his Lieutenant position), Mr. Maynard's rights were interfered with by Superintendent Sullivan on behalf of himself and on behalf of the MBTA, by causing a witness who had provided testimony favorable to Mr. Maynard during the initial phase of Mr. Maynard's arbitration, to recant his testimony and claim he had been directed by Mr. Maynard to provide false testimony. This recanting was false. Superintendent Sullivan obtained this recanting of the prior testimony and related claims, by threats, intimidation and coercion directed to the witness, as discussed in detail below.

13. Although Plaintiff contests the actions of the MBTA in disciplining him at all for the actions of which he was accused (regarding allegedly receiving overtime pay for approximately eighteen hours to which the MBTA wrongfully claimed he was not entitled), in this complaint Plaintiff claims that the discipline accorded him for this alleged infraction, the termination of his employment, was excessive and unduly severe and inconsistent with the discipline accorded other employees and officers who were found to have engaged in similar and comparable conduct. Plaintiff received this excessive and disproportionate discipline, due to bias and discrimination against him by the MBTA Police Department and in particular, the Chief of the MBTA Police

Department, Kenneth Green, due to his race (White) and his Veteran status, and ongoing years of hostility and badwill toward Plaintiff by Superintendent Sullivan.

14. Plaintiff was held to a stricter and more severe disciplinary standard than other employees in similar and comparable situations, due to his race and his Veteran status.

15. During all of the time he was employed by the MBTA Police Department, Plaintiff performed his duties in a more than satisfactory manner. Prior to the incidents for which Plaintiff was supposedly terminated, he had an unblemished disciplinary record.

16. Plaintiff started working for the MBTA Police Department in 1998, as a Patrolman. In 2006, he was promoted to the rank of Sergeant. In 2009 he was again promoted, this time to the rank of Lieutenant.

17. Plaintiff's initial assignment as Lieutenant was Staff Inspection. In the Spring of 2012, Plaintiff was given additional responsibility, when he was promoted to Lieutenant Commander, and given command of one of the four MBTA Police Department's patrol areas, TPSA-1, which consisted of Downtown Boston, one of the busiest and most difficult of the four TPSA areas. In 2014, Lieutenant Maynard received the Commonwealth Performance Award from then Governor of Massachusetts Deval Patrick, for his exemplary work performance.

18. From 2010 through 2012, Mr. Maynard was highly involved in the investigation and discipline (including an arbitration hearing) of an MBTA Police Department Sergeant and an MBTA Police Department Lieutenant, for their improper conduct.

19. From when Mr. Maynard was promoted to Lieutenant in 2010 through the spring of 2014, Paul MacMillan was the Chief of the MBTA Police Department. In the spring of 2014, Chief MacMillan retired, and Deputy Chief Kenneth Green was named the Interim Chief. Interim Chief Green was appointed permanent Chief of the MBTA Police Department in the Fall of 2015. Chief Green is Black-African American, and he is not a Veteran or a Disabled Veteran.

20. From approximately early 2011 through the date of Plaintiff's termination of employment and afterwards, Superintendent Sullivan (both in lower ranked positions as well as a Superintendent), had much hostility and bad will toward Plaintiff. This included the need for superior officers to intervene to correct the actions of Superintendent (then Lieutenant) Sullivan, and Superintendent (then Lieutenant) Sullivan verbally assaulting Plaintiff during a staff meeting. Superintendent (then Lieutenant ) Sullivan had also been found to have made false allegations against Mr. Maynard. Superintendent (then Lieutenant ) Sullivan refused numerous requests by superior officers to behave more professionally and withour hostility, toward Plaintiff. During early 2014, the situation had deteriorated to the point that Plaintiff filed harassment charges against Lieutenant Sullivan with the MBTA Office of Diversity and Civil Rights. These charges were never resolved.

21. In early 2015, Chief Green (having been appointed Chief in October 2014) appointed Lieutenant Sullivan as "Superintendent," his second in command.

22. From April 1, 2015 through June 23, 2016, Plaintiff served as the President of the MBTA Police Department Superior Officers Union. In his role as an activist Union President, Lieutenant Maynard had many heated discussions, differences, conflicts regarding work matters, and contentious interactions, with Chief Green and Superintendent Sullivan. One of the other members of the Union's Executive Board was Union Treasurer Lieutenant Michael Rae. Lieutenant Rae also was an activist Union officer, and in that role Lieutenant Rae also had many heated discussions, differences, conflicts regarding work matters, and contentious interactions, with Chief Green and Superintendent Sullivan.

23. In June of 2015, a private company complained to the MBTA Police Department about a detail Mr. Maynard had worked in April 2015, and for which he had been paid the contractual detal rate. On June 4, 2015, Mr. Maynard was placed on paid administrative leave while charges against him related to allegedly inappropriately claiming and being paid in excess were investigated. The investigation which was conducted was unfair and biased against Mr. Maynard, and he was not given a chance to defend himself or to explain why he had done nothing wrong. The MBTA contracted with an outside entity to conduct the investigation. The outside investigator did not interview Mr. Maynard, and had been instructed by the MBTA not to interview Mr. Maynard, thus denying Mr. Maynard any opportunity to exonerate himself at an early stage of the proceedings against him. The actions engaged in by Mr. Maynard were completely in compliance with MBTA Police policies and practices. One of the policies and practices at issue was that of paying Police Officers who were assigned to work "details," for their fully scheduled detail, even if the private party requesting the police

detail did not show up at the detail, if the private party had not cancelled the detail (so called "no show" details). Another policy and pratice was the discretionary ability of superior officers to work overtime, as needed, from locations of their choice.

24. In February 2016, Mr. Maynard had an "Appointing Authority Hearing" related to the charges against him, which was conducted by an MBTA Assistant General Counsel (an attorney on the staff of the MBTA) serving as Hearing Officer. The results of the Appointing Authority Hearing were issued in June of 2016. The Hearing Officer found that Mr. Maynard had improperly requested and been paid for detail and overtime overtime pay on a total of four occasions during 2014 and 2015, for a total of approximately 18 hours of detail and overtime pay. Although the Hearing Officer found that there was "just cause" to believe that Mr. Maynard had acted improperly, he did not recommend any discipline, but left that up to the Chief of Police, Chief Green.

25. The Hearing Officer's decision itself was incorrect, in that according to the collective bargaining agreement under which Mr. Maynard was employed, and the policies and practices of the MBTA Police Department, Mr. Maynard had done nothing wrong, illegal or inappropriate in requesting and being paid the contested detail and overtime pay. Mr. Maynard had been acting completely within the union contract, and MBTA Police Department policies and practices.

26. There was no "just cause" to believe Mr. Maynard had acted inappropriately. The MBTA Police Department and Chief Green knew this, but proceded with the Hearing and discipline anyway.

27. Prior to Mr. Maynard's Administrative Hearing, similar and comparable situations regarding detail pay and overtime pay disputes had been resolved either without any discipline, or without the need for any Appointing Authority Hearing. Additionally, other officers involved in alleged misconduct either similar to or more serious than the misconduct with which Mr. Maynard was accused, had received less severe discipline than was accorded to Mr. Maynard. Specifically, their employment was not terminated.

28. On June 23, 2016, Mr. Maynard received a letter from Chief Green stating that due to the findings of the Hearing Officer, his employment with the MBTA Police Department was being terminated immediately. Mr. Maynard's eighteen years of employment with the MBTA Police Department ended on June 23, 2016.

29. The bringing of the charges against Mr. Maynard, as well as the discipline he received (the termination of his employment), were excessive when compared to the allegations against him, were contrary to his collective bargaining agreement, were contrary to policies and practices of the MBTA Police Department, and were much more severe than actions taken against and discipline accorded to, MBTA Police Department employees in comparable situations previously. The extremely excessive discipline received by Mr. Maynard, the termination of his employment, was due to discrimination and bias against him by MBTA Police Department Chief Green due to his race (Caucasian-White) and his Veteran status. The excessive discipline was also taken against Mr. Maynard as punishment and retaliation for his having been an active union officer, thereby violating his First Amendment right to Freedom of Association.

30. On or about the second week of April 2016, Chief Green was interviewed on the radio by radio station 101.3 (an unlicensed or "pirate" radio station also known as BigCityFM) for over an hour, in a broadcast to the public. The interview was also recorded on video, and for some time was available to the public on You-Tube. During the interview, Chief Green was speaking as the Chief of the MBTA Police Department, and was in uniform. In the course of the interview, Chief Green made a number of statements which clearly indicated his bias, prejudice and discriminatory intent toward MBTA Police Department employees and potential employees who were White, or who were Veterans, and or who were disabled Veterans.

31. During the interview, Chief Green either stated directly, or implied, that there were too many White Police Officers in the MBTA Police Department, that there were too many White Superior Officers in the MBTA Police Department (in other words, Sergeants and Lieutenants), that there were not enough Black Police Officers in the MBTA Police Department, that there were not enough Black Superior Officers in the MBTA Police Department (in other words, Sergeants and Lieutenants), that there were too many Veterans and disabled Veterans in the MBTA Police Department, that Veterans and Disabled Veterans had been unfairly advanced in the MBTA Police Department, that his Command Staff also wanted to change the demographics of the MBTA Police Department, and that White people did not want things to change in the MBTA Police Department. Finally, Chief Green stated explicitly and specifically in his radio interview, that he personally intended to "Darken" the MBTA Police Department.

32. By imposing extremely excessive discipline on Mr. Maynard, Chief Green was both discriminating against him and basing his discipline upon his bias against Mr. Maynard as a White employee and as a Disabled Veteran, and was also trying to open up a Superior Officer position for a Black employee or a non-Veteran employee or non-disabled Veteran employee. He was carrying out his prejudiced belief that there were too many White Superior Officers, that there were too many officers who were Veterans or disabled Veterans, and he was carrying out his desire to "darken" the Department.

33. Even if Chief Green believed that Mr. Maynard had engaged in the improper conduct of which he was accused, Chief Green knew that the discipline he was imposing upon Mr. Maynard was too severe, and was based upon biases, prejudices, and an improper and illegal staffing agenda. Chief Green saw Mr. Maynard's situation as an opportunity to "open up" the Superior Officer ranks, and to advance his illegal and discriminatory personnel agenda.

34. In accordance with Mr. Maynard's union contract, an arbitration hearing occurred in February and March 2017 in which his termination was contested. One of the witnesses testifying for Mr. Maynard was an MBTA Police Department Patrolman, Officer William Smith. In summary, Officer Smith testified that it was not uncommon for an MBTA officer to work and be paid for "no show" details, that he had often worked such "no show" details, and that documents he had and which he authenticated during the hearing, indicated that he had worked such "no show" details.

35. After the arbitration hearing had concluded but before any decision had been issued, on April 13, 2017, Officer Smith was recalled form a detail at which he had been working

and informed that Superintendent Sullivan was accusing him of having perjured himself at Lieutenant Maynard's arbitration hearing, of having submitted false testimony, and of having colluded with Lieutenant Maynard to submit and authenticate false documents regarding the "no show" details, and that Superintendent Sullivan wanted him to recant his testimony. After stating several times that he had not lied, had not altered documents, and would not recant his testimony, Officer Smith was told that Superintendent Sullivan was going to contact the District Attorney to pursue criminal charges against Officer Smith, unless he recanted his testimony. Officer Smith continued to insist that he had not lied or fabricated documents, that he had told the truth, and that he would not recant his testimony. This questioning and haranguing of Officer Smith went on for approximately four hours, during which time Officer Smith was not free to leave MBTA Police Headquarters. At the end of the four hours, Officer Smith was relieved of duty and placed on paid administrative leave, with no ability to work details (which he depended upon for his income).

36. The decision of Arbitrator Wooters was issued on July 7, 2017. In that decision, Arbitrator Wooters found that the most serious charges against Mr. Maynard were not justified, and that the MBTA had not met its burden of proof on many of the charges. In conclusion, the Arbitrator found that although there was just cause to discipline Mr. Maynard for his conduct, the charges for which the arbitrator found "just cause" did not merit termination, and that to the extent a lesser penalty was required, reinstatement to Mr. Maynard's position would be required. An additional hearing was scheduled to determine the appropriate penalty, particularly as the MBTA had claimed it had wanted

12

to present evidence showing that Mr. Maynard should not be reinstated, but the arbitrator deferred the hearing of that evidence.

37. Several days after Arbitrator Wooters issued his decision, Officer Smith (who was still on administrative leave) was ordered back to MBTA Police Headquarters. At Headquarters, Superintendent Sullivan insisted that Officer Smith recant his testimony, and that he state that Lieutenant Maynard had coerced him (Officer Smith) into perjuring himself and that Lieutenant Maynard had fabricated the documents about "details." Officer Smith continued to refuse to recant his terstimony, and continued to be threatened with criminal prosecution and termination of employment. Officer Smith was informed that he would be called back at a later date for a termination hearing. Officer Smith had been threatened with a variety of charges, ranging from speeding in a department vehicle, to larceny. During his time on paid leave, Officer Smith was subjected to a thorough departmental investigation into allof his activities, and his perceived violations were used as leverage to compel him to recant his testimony.

38. Officer Smith was called to MBTA Police Headquarters on July 27, 2017 for a termination of employment hearing. Under the threat of termination of employment and criminal prosecution made by Superintendent Sullivan, Officer Smith finally relented to the intimidation, threats and coercion of Superintendent Sullivan, and agreed to recant his testimony, and on information and belief, to testify that he had perjured himself at the arbitration hearing, that the documents he had authenticated were false, and that the documents had been altered or fabricated by Lieutenant Maynard. On information and belief, in exchange for this testimony, it was agreed that Officer Smith would not have

13

his employment terminated, that prosecution of him would not be sought, that he would be allowed to continue working, and that he might eventually be allowed to work more details.

39. A second arbitration hearing was held in September and October 2017, regarding what penalty would be appropriate for Mr. Maynard, given the Arbitrator's decision that termination was not justified. Among other things, Officer Smith recanted his prior testimony, testified that he had perjured himself in the prior hearing, testified that Mr. Maynard had requested he provide false testimony and false documents at the prior hearing, and that Mr. Maynard had falsified the documents which had been authenticated by Officer Smith. Officer Smith's "agreement" with the MBTA Police Department upon which he recanted his testimony, was not allowed into evidence. During this hearing, among other things, Superintendent Sullivan falsely testified that Mr. Maynard had been in touch with local media outlets regarding the case.

40. On January 26, 2018, Arbitrator Wooters issued his decision on the penalty phase of the case. He agreed with the MBTA that Mr. Maynard had engaged in post termination conduct which prevented him from being reinstated. Although Arbitrator Wooters granted a partial backpay award, and stated that if not for testimony at the second phase of the hearing he would have ordered Mr. Maynard suspended for five days, that he was reversing his suggestion of reinstatement. In doing so, he based his decision on a finding that Mr. Maynard had convinced Officer Smith to give false testimony in the first phase of the hearing, and that Officer Smith's testimony of the first phase of the hearing was untrue. Despite finding there to be credibility issues involving Officer Smith and despite

Officer Smith's apparent perjury, Arbitrator Wooters believed Officer Smith's testimony and did not credit Mr. Maynard's testimony on the issues before him. However, Arbitrator Wooters stated that it was only Officer Smith and Mr. Maynard who actually knew the truth of their testimony. This decision not to order reinstatement, and to order only a partial backpay award, was based almost completely upon Officer Smith's revised testimony and false claims about his interactions with Mr. Maynard. Officer Smith's testimony in the second phase of the hearing was false. His testimony at the first phase of the hearing had been truthful. Officer Smith's testimony in the second phase of the hearing was contrary to both what he had testified to at the first hearing, as well as what he had stated to Mr. Maynard's attorney (prior to the first hearing) his testimony would be. Officer Smith's new and false account was refuted and directly contradicted by Mr. Maynard's attorney, testifying as a witness under oath at the arbitration hearing.

41. The testimony presented by Officer Smith at the second phase of the hearing was due solely to the coercion, threats and intimidation engaged in against Officer Smith by Superintendent Sullivan. During the hearing, Superintendent Sullivan also provided false testimony regarding media contacts he alleged were made by Mr. Maynard.

42. Plaintiff's right to a fair hearing and due process in relation to his termination of employment, pursuant to the Fifth Amendment to the U.S. Constitution, as well as Massachusetts statutes, was interfered with by Defendant Sullivan through the coercion, threats and intimidation engaged in against Officer Smith.

43. The MBTA is fully responsible for the actions of Chief Green, Superintendent Sullivan, and any of the other supervisors and managers who engaged in improper actions against Lieutenant Maynard as alleged in this Complaint.

44. By the actions set forth above, the MBTA has engaged in discrimination and illegal retaliation against Lieutenant Maynard and denial of his civil rights. The discrimination and retaliation of which Lieutenant Maynard complains, was sanctioned and directed by individuals on the MBTA Police Department Command Staff. All of these actions as well as the actions of retaliation set forth above were part of an illegal campaign of discrimination and retaliation against Lieutenant Maynard.

45. The actions of the MBTA, Chief Green and Superintendent Sullivan set forth above were willful, intentional and knowing.

46. As a direct and proximate result of the illegal, discriminatory and retaliatory actions of the MBTA, Chief Green and Superintendent Sullivan towards him as alleged in this Complaint, Lieutenant Maynard has suffered and will continue to suffer severe emotional and financial harm.

## Count I. Against Commonwealth of Massachusetts, MBTA, for Racial Discrimination in Violation of MGL Chapter 151B.

47. Plaintiff restates and incorporates by reference as if fully set forth herein paragraphs 1-46 above.

48. By its actions set forth above, Defendant Commonwealth of Massachusetts, MBTA, has engaged in discrimination against Mr. Maynard on the basis of race, in violation of M.G.L. Chapter 151B.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against Defendant, Commonwealth of Massachusetts, MBTA, in an amount to be determined by this Court, including monies to compensate him for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, reinstatement to

his former position, and such other and further relief that this Court deems just and proper.

## Count II. Against Kenneth Green for Racial Discrimination in Violation of MGL Chapter 151B.

49.    Plaintiff restates and incorporates by reference as if fully set forth herein in

paragraphs 1-48 above.

50.    By his actions set forth above, Kenneth Green aided and abetted the

discrimination due to race to which Mr. Maynard was subjected, in violation of M.G.L.

c.151B.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against Defendant, Kenneth Green, in an amount to be determined by this Court, including monies to compensate him for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, reinstatement to his former position, and such other and further relief that this Court deems just and proper.

## Count III. Against Commonwealth of Massachusetts, MBTA, for Discrimination due to Veteran Status in Violation of 38 U.S. Code section 4301

51.    Plaintiff restates and incorporates by reference as if fully set forth herein

paragraphs 1-50 above.

52.    By its actions set forth above, Defendant Commonwealth of Massachusetts,

MBTA, has engaged in discrimination against Mr. Maynard on the basis of Veteran

status, in violation of 38 U.S. Code et seq.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against Defendant, Commonwealth of Massachusetts, MBTA, in an amount to be determined by this Court, including monies to compensate him for lost pay, lost benefits, punitive damages, emotional pain and suffering, interest, costs, attorney's fees, reinstatement to his former position, and such other and further relief that this Court deems just and proper.

## Count IV. Against Kenneth Green, for Discrimination due to Veteran Status in Violation of 38 U.S. Code section 4301.

53.    Plaintiff restates and incorporates by reference as if fully set forth herein in

paragraphs 1-52 above.

54.    By his actions set forth above, Kenneth Green aided and abetted the

discrimination due to Veteran status to which Mr. Maynard was subjected, in violation of

38 U.S. C. section 4301.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against
Defendant, Kenneth Green, in an amount to be determined by this Court, including
monies to compensate him for lost pay, lost benefits, punitive damages, emotional pain
and suffering, interest, costs, attorney's fees, reinstatement to his former position, and
such other and further relief that this Court deems just and proper.

### Count V.  Against Commonwealth of Massachusetts, MBTA, for Racial
### Discrimination in violation of 42 U.S. Code section 1981.

55.    Plaintiff restates and incorporates by reference as if fully set forth herein

paragraphs 1-54 above.

56.    By its actions set forth above, Defendant Commonwealth of Massachusetts,

MBTA, has engaged in discrimination against Mr. Maynard on the basis of race, in

violation of 42 U.S. Code section 1981.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against
Defendant, Commonwealth of Massachusetts, MBTA, in an amount to be determined by
this Court, including monies to compensate him for lost pay, lost benefits, punitive
damages, emotional pain and suffering, interest, costs, attorney's fees, reinstatement to
his former position, and such other and further relief that this Court deems just and
proper.

### Count VI.  Kenneth Green for Racial Discrimination in violation of 42 U.S. Code
### section 1981.

57.    Plaintiff restates and incorporates by reference as if fully set forth herein in

paragraphs 1-56 above.

58.     By his actions set forth above, Kenneth Green aided and abetted the

discrimination due to race to which Mr. Maynard was subjected, in violation of 42 U.S.

Code section 1981.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against
Defendant, Kenneth Green, in an amount to be determined by this Court, including
monies to compensate him for lost pay, lost benefits, punitive damages, emotional pain
and suffering, interest, costs, attorney's fees, reinstatement to his former position, and
such other and further relief that this Court deems just and proper.

### Count VII.  Against Kenneth Green for Violation of First Amendment Rights (Freedom of Association) Pursuant to 42 U.S.Code Section 1983.

59.     Plaintiff restates and incorporates by reference as if fully set forth herein in

paragraphs 1-58 above.

60.     By his actions set forth above, Kenneth Green has acted under color of state law

to wrongfully deprive Mr. Maynard of his constitutional right to Freedom of Association,

by retaliating against him for exercising his rights to join with, participate and engage in

and lead labor union activities at the MBTA Police Department.

61.  As a direct and proximate result of Defendant's wrongful actions, Mr. Maynard has

suffered emotional distress and financial damages.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against
Defendant, Kenneth Green, in an amount to be determined by this Court, including
monies to compensate him for lost pay, lost benefits, punitive damages, emotional pain
and suffering, interest, costs, attorney's fees, reinstatement to his former position, and
such other and further relief that this Court deems just and proper.

### Count VIII.  Against Richard Sullivan for Violation of First Amendment Rights (Freedom of Association) Pursuant to 42 U.S.Code Section 1983.

62.     Plaintiff restates and incorporates by reference as if fully set forth herein in

paragraphs 1-61 above.

63.     By his actions set forth above, Richard Sullivan has acted under color of state law

to wrongfully deprive Mr. Maynard of his constitutional right to Freedom of Association,

by retaliating against him for exercising his rights to join with, participate and engage in

and lead labor union activities at the MBTA Police Department.

64. As a direct and proximate result of Defendant's wrongful actions, Mr. Maynard has

suffered emotional distress and financial damages.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against
Defendant, Richard Sullivan, in an amount to be determined by this Court, including
monies to compensate him for lost pay, lost benefits, punitive damages, emotional pain
and suffering, interest, costs, attorney's fees, reinstatement to his former position, and
such other and further relief that this Court deems just and proper.

## Count IX. Against Richard Sullivan for Interference with Protected Rights in Violation of MGL Chapter 12 section 11, through Threats, Intimidation and Coercion.

65. Plaintiff restates and incorporates by reference as if fully set forth herein in

paragraphs 1-64 above.

66.     By his actions set forth above, Richard Sullivan has interfered with Mr.

Maynard's protected rights (his rights to due process prior to being deprived of a liberty

or property interest, and his right under Massachusetts law to a fair hearing prior to

termination of employment), through his manipulation of the testimony of a witness at

Mr. Maynard's termination arbitration hearing through threats, intimidation and coercion.

67. As a direct and proximate result of Defendant's wrongful actions, Mr. Maynard has

suffered emotional distress and financial damages.

WHEREFORE, Plaintiff demands that this Court enter Judgment in his favor and against
Defendant, Richard Sullivan, in an amount to be determined by this Court, including
monies to compensate him for lost pay, lost benefits, punitive damages, emotional pain
and suffering, interest, costs, attorney's fees, reinstatement to his former position, and
such other and further relief that this Court deems just and proper.

## Count X. Against Richard Sullivan for Intentional Interference with Contractual or Advantageous Relationshuips.

68. Plaintiff restates and incorporates by reference as if fully set forth herein in paragraphs 1-67 above.

69.     In relation to his employment with Defendant MBTA, Mr. Maynard was employed pursuant to a contract, and had a reasonable expectation of continued employment, which expectation amounts to an advantageous relationship. By his actions set forth above, Defendant Sullivan knowingly interfered with that contract and those advantageous relationships. The actions of Defendant Sullivan in interfering with the contractual and advantageous relationships of Mr. Maynard with Defendant MBTA were intentional, and were engaged in by improper motive or means, in particular, the threats, intimidation and coercion referred to above. Mr. Maynard suffered harm by these actions interfering with his contractual and advantageous relationships, including financial harm and emotional pain and suffering. The actions of Defendant Sullivan in interfering with Mr. Maynard's contractual and advantageous relationships were engaged in due to his actual malice toward Mr. Maynard.

**WHEREFORE**, Plaintiff demands that this Court enter Judgment in his favor and against Defendant Richard Sullivan in an amount to be determined by this Court, including monies to compensate him for emotional pain and suffering, lost income, interest, costs, and such other and further relief that this Court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY AS TO ALL COUNTS AND ISSUES SO TRIABLE.

CHRISTOPHER MAYNARD
By his Attorney,

/s/ Mitchell J. Notis

_____

Mitchell J. Notis, BBO#374360
Law Office of Mitchell J. Notis
32 Kent Street
Brookline, MA 02445
Tel.: 617-566-2700